IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Paulette Lanese, | ) | Case No. 07 cv 1327 |
| | ) | |
| Plaintiff, | ) | **Memorandum Opinion** |
| | ) | |
| v. | ) | |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | Magistrate Judge James S. Gallas |
| Social Security, | ) | |
| | ) | |
| Defendant. | | |

*Introduction and Procedural History:*

Paulette Lanese filed this appeal pursuant to 42 U.S.C § 405(g) seeking judicial reversal

from the administrative denial of disability insurance benefits under Title II of the Social

Security Act. As instructed, Lanese submitted a fact sheet and statement of error and the

Commissioner responded. At issue is the ALJ's decision dated November 23, 2005, which stands

as the final decision of the Commissioner. The parties consented to the jurisdiction of the

Magistrate Judge for all further proceedings and entry of judgment in accordance with 28 U.S.C.

§636(c) and Rule 73 of the Federal Rules of Civil Procedure.

At the time of the ALJ's decision, Lanese was 60 years old, had a high school education,

and had worked as a customer service representative and an accounting clerk.  (Tr. 15).  Lanese

sought disability insurance benefits on the basis of ulcerative colitis, leg swelling (deep venous

thrombosis), ulcer of the esophagus, a "heart condition", a urinary tract infection, obesity and

depression.  (*Id.* at 16).  The ALJ found that Lanese's heart condition, urinary tract infections

and ulcer of the esophagus were not severe impairments.  (*Id.*).  While the ALJ found that

Lanese's ulcerative colitis, deep venous thrombosis, obesity and depression were severe impairments, they did not meet the criteria of a Listing level impairment.  (*Id.* at 16-18).  The ALJ evaluated Lanese's residual functional capacity and determined that she is able to perform sedentary work with only occasional interaction with the public, and in a low stress environment. (*Id.* at 18).   The ALJ decided that Lanese is able to perform her past relevant work as a customer service representative despite the limitation on her ability to interact with the public because in her past job, Lanese interacted with the public over the telephone as opposed to in person.  (*Id.* at 22).

Lanese raises several sub-arguments under her general contention that substantial evidence proves that her nonexertional restrictions prohibit the performance of her past relevant work as a customer service representative and disability should be recognized under sedentary work restrictions or the matter remanded for vocation reevaluation.

First, Lanese asserts that the ALJ's decision that she can perform sedentary work with limited contact with the public is not supported by substantial evidence.  She also argues that the ALJ's finding regarding her residual functional capacity is not supported by substantial evidence.  Specifically, Lanese contends that she suffers from additional mental limitations, diarrhea with the need to frequently and urgently use the restroom, and the need to elevate her legs which prohibits past relevant work and allows for a finding of disability.  (Stmt. Of Errors at p. 3).  Lanese is correct that her nonexertional limitations preclude a return to her past relevant work and that remand for vocational expert testimony is warranted.

*Standard of Review*:

The issues before this court must be resolved under the standard whether there is

substantial evidence in the record to support the Commissioner's decision.  Substantial evidence

is more than a scintilla of evidence, but less than a preponderance.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971). Substantiality is based upon the record taken as a whole.  *Barney v.*

*Secretary of Health and Human Services*, 743 F.2d 448 (6th Cir. 1984); *Houston v. Secretary of*

*Health and Human Services*, 736 F.2d 365 (6th Cir. 1984).  Substantial evidence is evidence that

a reasonable mind would accept as adequate to support the challenged conclusion.  *Casey v.*

*Secretary of Health & Human Services*,  987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v.*

*Secretary*, 893 F.2d 106, 108 (6th Cir. 1989); *Richardson*, 402 U.S. at 401.

> In determining whether the Secretary's factual findings are supported by
> substantial evidence, we must examine the evidence in the record `taken
> as a whole.'  *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and
> "must take into account whatever in the record fairly detracts from its
> weight."  *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383,
> 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S.
> 474, 488, 71 S.Ct. 456, 464-65, 95 L.Ed. 456 (1951)).  If it is supported by
> substantial evidence, the Secretary's determination must stand regardless
> of whether the reviewing court would resolve the issues of fact in dispute
> differently.  *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)
> (per curiam).

*Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173

(6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not

inquire whether the record could support a decision the other way").

*The ALJ's Finding That Lanese Is Able to Perform Her Past Relevant Work Is Not*

*Supported By Substantial Evidence:*

Lanese's argument is that her limitation to occasional interaction with the public precludes her from being able to do her past relevant work.  This argument is well-taken.  Dr. Halas, a clinical psychologist, assessed Lanese as being moderately limited in her ability to relate to others. (Tr. 420).   K.S. Steiger, Ph.D., the non-examining state agency psychologist, concluded that Lanese was markedly limited in the ability to interact appropriately with the general public.  (*Id.* at 548).  The ALJ incorporated this restriction in his decision and found that Lanese may perform work that involves "only occasional interaction with the public. . . ."  (Tr. 18).  He phrased the restriction as "limited contact with the public" in the enumerated findings. (*Id.* at 23, finding no. 8).  Despite this limitation, however, the ALJ concluded that Lanese could return to her former job as a customer service representative.  The ALJ found it significant that she interacted with the public over the telephone, as opposed to interacting  in person.  (*Id.* at 22-23).

The ALJ's decision that Lanese can perform her past relevant work as a customer service representative with her limitations as to contact with the public is internally inconsistent and does not make sense.  Lanese's limitation on her ability to interact with the public is one of *frequency* of contact (occasional)–not *mode* of contact (in person versus via telephone).  There is no medical or factual support for the ALJ's decision, and only a scintilla of logical support (it is arguably more stressful to deal with customers face-to-face).  This does not equate to substantial evidence and requires remand.  *Cf. Allen v. Barnhart*, 357 F.3d 1140, 1143-44 (10th Cir. 2004) (ALJ's determination that claimant was not disabled could not be defended on basis of vocational expert's identification of specific jobs that claimant could perform, where two of the

three specifically identified jobs involved contact with the public, which was not keeping with the precision limitation of limited public interaction placed on claimant's RFC).  Further, it is also questionable whether Lanese's former position as a customer service representative meets the limitation of a low-stress work environment.

When an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).  The Commissioner can fulfill this duty by utilizing the medical-vocational guidelines of Appendix 2, commonly referred to as the "grids."  *See* 20 C.F.R. Part 404, Subpt. P, App. 2.  The guidelines allow administrative notice to be taken of the existence of jobs considering that individual's residual functional capacity for sedentary, light or medium work in addition to that individual's age, education and prior work experience.  *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983);  *Abbott*, 905 F.2d at 926; *Kirk v. Secretary*, 667 F.2d 524, 529 (6th Cir. 1981) *cert. denied*; 461 U.S. 957 (1983) *and see* 42 U.S.C. §423(d)(2)(A) (2004).  These guidelines, however, may only be used as a "framework" if that individual's abilities are restricted by nonexertional impairments that are not included in the guideline considerations.  *Abbott*, 905 F.2d at 926-27; *Kimbrough v. Secretary*, 801 F.2d 794, 796 (6th Cir. 1986).  The guidelines cannot be used where nonexertional impairments are so significant that the individual does not possess the residual functional capacity on which the guidelines are based.  *Damron v. Secretary*, 778 F.2d 279, 282 (6th Cir. 1985);  *Kirk*, 667 F.2d at 524.  Thus, the guidelines may not be used to "preclude" a finding of disability when a significant nonexertional impairment exists.  *Abbott*, 905 F.2d at 927; *Cole v. Secretary*, 820

F.2d 768, 772 (6th Cir. 1987); *Kirk*, 667 F.2d at 524.  Lanese argues that she is disabled under

Appendix 2, Rule 201.06 as a person of advanced age limited to sedentary work with no

transferable skills.  Rule 201.06 in Table 1, applies to an individual who is limited to sedentary

work as a result of severe medically-determinable impairments.  It directs a finding of "disabled"

when the individual is age 55 or older, has a high school graduate education or more which does

not provide for direct entry into skilled work and previous work experience that was skilled or

semi-skilled, but has no transferable skills.  However, Grid Rule 201.07 directs a finding of "not

disabled" when that same individual has transferable skills.  In Lanese's case, there is no

evidence in the record about the transferability of her skills.  Therefore, her vocational abilities

should be reassessed on remand as set forth herein.

On the other hand, when the ALJ finds that an individual's functional capacity does not

coincide with the guidelines due to a significant nonexertional restriction, then the ALJ may

obtain expert vocational testimony or use the *Dictionary of Occupational Titles* to specifically

identify jobs which can be performed considering that individual's age, education, prior work

experience and functional restrictions.  *Kirk*, 667 F.2d at 541; *Hurt v. Secretary*, 861 F.2d 1131,

1142-43 (6th Cir. 1987); *Abbott*, 905 F.2d at 927.  Here, Lanese's nonexertional restrictions on

her ability to interact with the public and to withstand stress are significant.   Remand is thus

required for vocational expert testimony on the impact of Lanese's nonexertional limitations on

her ability to perform sedentary work and whether a significant number of such jobs exist in the

national economy.  Having concluded that remand is appropriate, the Court will consider

Lanese's remaining arguments so as to clarify the issues on remand.

*ALJ's Findings Regarding Lanese's Residual Functional Capacity Are Supported By Substantial Evidence:*

Lanese asserts that the ALJ did not give appropriate deference to the opinions of her treating and examining physicians, doctors Isakov, Melamud and Halas.  (Stmt. Of Errors at p. 5).  This court, finds, however, that the ALJ appropriately considered and weighed these physicians' opinions.  The general rule is that controlling weight must be given to the treating physician's opinion under SSR 96-2p when it is "well supported" by medically acceptable clinical and laboratory diagnostic techniques."  But this rule also provides that the opinion must not be inconsistent with "other substantial evidence in the case record."  The Commissioner is not absolutely  bound by the opinion of a treating physician but must "set forth some basis for rejecting these opinions," and  must "give good reasons" for not giving weight to a treating physician's opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (1987);  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (applying 20 C.F.R. §404.1527(d)(2)).  "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and a specialization of the treating source – in determining what weight to give the opinion."  *Wilson*, at 544 citing 20 C.F.R. §404.1527(d)(2).   In general, "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician . . ."  *Shelman*, 821 F.2d at 321, quoting *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (*per curiam*); and see 20 C.F.R. §404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you . . .").

If a physician's opinion is not supported by sufficient medical evidence, the ALJ may

give lesser weight to that opinion or credit another medical opinion over the unsupported one. *Garner v. Heckler*, 745 F.2d 383 (6th Cir.  1984); 20 C.F.R. §404.1527(d)(3). As the regulation reads, "The better an explanation a source provides for an opinion the more weight we will give that opinion." *Id.*  Additionally, 20 C.F.R. §404.1527(d)(3)  requires the Commissioner to consider "all the pertinent evidence in your claim, including opinions of treating and other examining sources."  Finally, 20 C.F.R. §404.1527(e)(1) states, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." To summarize, the ALJ is not bound by conclusory opinion which is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *Cutlip v. Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Lanese specifically refers to the July 31, 2003 report of treating physician Dr. Isakov, a cardiologist, in which he opined that "she is not really capable of doing a full days work, especially unable to bend, lift and stand for a full length of time."  (Tr. 394).  The ALJ gave reduced weight to Dr. Isakov's conclusion regarding Lanese's inability to work, correctly noting that the ultimate finding regarding disability is reserved to the Commissioner.  20 C.F.R. §404.1527(e).  (Tr. 20).  Further, there was no objective medical evidence or testing to support Dr. Isakov's assessment that Lanese is unable to bend or lift.  The ALJ does not expressly address whether he accepted Dr. Isakov's determination that Lanese cannot stand for a long period of time, however, it appears that he implicitly accepted that restriction because he found that she is limited to sedentary work.  (Lanese testified that she can stand for thirty minutes at a time.)  (Tr. 719).

-8-

Lanese also argues that the ALJ did not give proper deference to the opinions of Dr. Melamud, who treated her for ulcerative colitis.  Dr. Melamud noted that she suffered from abdominal pain, persistent ulcerations in the colon, persistent diarrhea and recurrent rectal bleeding.[1]  Dr. Melamud did not opine as to Lanese's prognosis, what she can still do despite her impairment, or her physical restrictions.  *See* 20 C.F.R. 404.1527(a)(2) (defining medical opinion).  The ALJ clearly acknowledged Dr. Melamud's opinion and accepted his diagnosis of ulcertaive colitis, though he did not comment on the weight he accorded to the May 18, 2004 response to the Agency's questionnaire in which Dr. Melamud provided his diagnoses of ulcertaive colitis and ulcerative esophogitis and noted that Lanese had persistent diarrhea, rectal bleeding and abdominal pain.  (Tr. 18; 310-311).  To the extent that Lanese believes the ALJ disregarded Dr. Melamud's response, he had good reasons to do so.  This situation warrants the application of harmless error rule. The factual findings as a whole show implicit resolution of the conflict. See *Kornecky v. Commissioner of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. Feb. 9, 2006); *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004); *Heston v. Commissioner of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001) (ALJ had considered the limitations described by treating physician).

Dr. Melamud's opinion that Lanese suffered from abdominal pain, persistent ulceration in the colon, persistent diarrhea and recurrent rectal bleeding were recognized and discounted by the ALJ as contradicted by the weight of the medical evidence.  The ALJ noted the internal

---

[1]There seems to be some confusion as to Dr. Melamud's questionnaire response.  (Tr. 309-311).  The response is dated May 18, 2004, though the ALJ refers to it as being dated April 20, 2004.  (Tr. 19).  Further, though the responses are generally consistent, Dr. Melamud seems to have answered the same eight questions twice.  (Compare Tr. 310 and 311).

inconsistency in Dr. Melamud's statement that Lanese was unable to gain weight due to her

condition whereas in his report he acknowledged that she had gained back 20 pounds of the 60

she had lost.  (Tr. 19).  Consequently, the ALJ could opt to use the nonexamining state agency

physician's report to provide substantial evidence that Lanese could perform sedentary work.

(*Id. at* 20, 391).

A recent decision from the United States District Court for the Eastern District of

Tennessee is instructive.  In *Finchum v. Astrue,* the plaintiff argued that the ALJ's RFC

determination that she was capable of performing light work was not supported by substantial

evidence.  No. 3:07-cv-254, 2008 WL 3914452 (E.D.Tenn. Aug. 20, 2008).  Finchum asserted

the ALJ failed to consider her chronic diarrhea resulting from irritable bowel syndrome, which

forces her to take numerous bathroom breaks during the day.   The district court upheld the

ALJ's decision denying benefits.  *Id.*  In making his RFC determination in that case the ALJ

noted while the record supported plaintiff's diagnosis of IBS and fibromyalgia, further medical

evidence in regard to these two ailments did not support a finding that plaintiff is "totally

disabled" since her treatment notes indicate that she had "noted improvement in her condition"

and was primarily treated with prescription drugs and recommendations to change her diet.  *Id.*[2]

The *Finchum* case provides support for the ALJ's decision that Lanese's condition had improved

such that she was not disabled.  *See also Humphries v. Barnhart*, No. 05-17148, 2006 WL

1559890, *3 (11th Cir. June 8, 2006) (physicians' opinions were reasonable assessments at the

time they were made; but they were not consistent with more recent evidence suggesting that

___

[2]The ALJ noted that Finchum would need access to a restroom during regularly
scheduled breaks.  Although the ALJ in Lanese's case did not include such a requirement, access
to a restroom during breaks is the norm, not a special accommodation.

-10-

claimant's condition had improved); *Donatelli v. Barnhart*, No. 04-2828, 2005 WL 859278, *3 (3rd Cir. April 15, 2005) (ALJ's RFC assessment was based on substantial evidence including physician reports that claimant's back pain had decreased); *Lopez v. Barnhart*, No. 04-1085, 2004 WL 1925392 (8th Cir. Aug. 31, 2004) (substantial evidence supported ALJ's RFC assessment despite contrary opinion from treating physician; record evidence established that her conditions improved with medication and surgery); *Bevans v. Barnhart*, No. 02-55573, 2003 WL 1473564, *2 (9th Cir. Mar. 17, 2003) (ALJ properly rejected examining physician's opinion that claimant could not work, in part, because claimant's "medical history as a whole reveals an overall improving trend").

Lanese also argues that Dr. Halas, a clinical psychologist, assessed her as having nonexertional limitations beyond those recognized by the ALJ. Lanese emphasizes that Dr. Halas opined that she is moderately limited in her ability to relate to others, that she is markedly restricted in withstanding work-related stresses and pressures and that Lanese's "anxiety attacks and symptoms of depression are likely to become quickly exacerbated if placed in a setting that is fast paced, quick changing or demanding." (*Id.* at Tr. 420).

The ALJ gave limited weight to the Dr. Halas's opinion that Lanese has marked limitations in the ability to withstand the stresses and pressures associated with most work settings. (Tr. 21). The ALJ discounted Dr. Halas' opinion of Lanese's mental functioning because it contradicted his own report, wherein he found Lanese had a global assessment function ("GAF") score of 55 (indicating moderate symptoms) but functioned at a GAF score of 70 (indicating mild symptoms). Also, the ALJ noted that she stopped taking medication for depression two weeks after it was prescribed to her because she did not want to take new pills.

-11-

Further, Dr. Halas' finding was based on Lanese's subjective complaints and were contradicted by the evidence of Lanese's activities of daily living.  (Tr. 21).

The ALJ reduced the weight he accorded to Dr. Halas' opinions because Lanese had never sought psychiatric or psychological treatment until a month after she filed for disability benefits and because there is no indication that her alleged symptoms ever interfered with her ability to perform her past jobs.  These reasons are not valid.  It is certainly possible that her depression and anxiety manifested after she stopped working allegedly due to her health conditions.  Moreover, the ALJ essentially incorporated each of Dr. Halas' limitations into the finding that Lanese was limited to sedentary work in a low stress environment with limited or occasional contact with the public.  (Tr. 18, 23).

*The ALJ's Assessment of Lanese's Subjective Complaints of Pain Was Reasonable Except The ALJ Did Not Make Findings As to Her Leg Swelling*

Lanese asserts that the ALJ failed to give appropriate weight to her subjective complaints of disabling pain under 20 C.F.R. § 404.1529, including her need to frequently use the restroom because of diarrhea, her need to elevate her leg while sitting and to avoid stress.  (Stmt. Of Errors pp. 7-8).  At the hearing, Lanese testified that her colitis acts up everyday and that her leg swells, requiring elevation.  She testified that she uses the restroom seven to eight times a day and that she was unable to perform her job as a customer service representative because of the effect of stress on her colitis and her constant need for access to a restroom.  (Tr. 21; 717, 719)

A court will not disturb a credibility determination made by the ALJ, the finder of fact. *Smith*, 307 F.3d at 379.  The court does not try the case anew, resolve conflicts in the evidence, or decide questions of credibility.  *Id.  See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).  Even when there is medical evidence of an impairment which could reasonably be

-12-

expected to cause a claimant's symptoms, the ALJ is not required to credit the claimant's

testimony.  *Jones v. Commissioner*, 336 F.3d 469, 475-76 (6th Cir. 2003).  Although an ALJ may

not ignore a claimant's subjective complaints, an ALJ's finding regarding the credibility of a

claimant's testimony is entitled to great deference.  *Blacha v. Secretary of H.H.S.*, 927 F.2d 228,

239 (6th Cir. 1990).

The analysis under 20 CFR § 404.1529 is two-pronged.  *Duncan v. Sec'y of Health &*

*Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986).  First, the ALJ must examine whether there is

"objective medical evidence of an underlying medical condition."  *Id.*   If there is objective

medical evidence, then the ALJ must decide if the objective medical evidence: (1) confirms the

severity of the alleged pain; or (2) if the established medical condition is of such a severity that it

can be expected to produce the disabling pain.  *Id.*

The ALJ did not find Lanese's "statements regarding her limitations, pain and other

symptoms convincing or credible."  (Tr. 21.*).*  In so holding, the ALJ cited apparent

inconsistencies between Lanese's description of the severity of the effects of her colitis.  (*Id.* at

22).  The ALJ relied upon Dr. Schnur's October 26, 2004 notes.  (Tr. 647).  Lanese was referred

to Dr. Schnur, an oncologist, because of an abnormal protein profile.  (*Id.*).  Dr. Schnur noted,

presumably based upon statements from Lanese:

> She apparently was quite ill [with colitis] 2 years ago, and had
> unintentional weight loss from 266 down to 180 pounds.  She was placed
> on Pentasa, and has had rather dramatic improvement.  She was having
> more than 10 watery stools a day and now has fairly good control.  Her
> weight is back up to 220 pounds. . . .  She, in general, has been feeling
> reasonably well. . .  Her appetite has been good.

(*Id.*).

The ALJ also pointed out that in her April 8, 2004 Function Report, Lanese wrote "I

barely eat because of my ulcerative colitis/ulcer of the esophagus, everything I eat goes right

through me, either by means of diarrhea or vomiting. . . . I have lost 70 lbs." (Tr. 22; 128).

Three months later, Lanese told Dr. Halas that her appetite level was good and she reported

having gained weight over the past six months. (*Id.* at 417). Yet, mere weeks later, in a

statement to the administrative agency, Lanese reported that she is "in the bathroom 5-10 times a

day with diarrhea and vomiting." (*Id.* at 22; 141). The ALJ summed up his credibility findings

as lacking "medical evidence, from her alleged onset through the present, to substantiate her

claims regarding frequent diarrhea and vomiting, and she has not reported these symptoms to any

medical professional. On the contrary, her condition appears well controlled." (*Id.* at 22).

Although the ALJ's statement that there is no medical evidence to support her claims of frequent

diarrhea and vomiting is an overstatement, there is substantial evidence to support his finding

that Lanese's ulcerative colitis is controlled by medication.

The ALJ, does not, however, make any explicit findings with respect to Lanese's claim

that she has to elevate her leg for at least two hours during a normal work day. While there is no

specific doctor's recommendation that she should elevate her leg, it is undisputed that Lanese

has chronic venous thrombosis, which could logically require her to elevate her leg to reduce

swelling. It appears that the ALJ did not address Lanese's need to elevate her leg because he

found that she could return to her past relevant work as a customer service representative where

she testified she was able to rest her leg on a bench. On remand, the ALJ should make an

explicit finding as to Lanese's need to elevate her leg and incorporate that finding, if appropriate,

into the hypothetical for the vocational expert's consideration.

Finally, as to Lanese's complaints of difficulty withstanding stress, the ALJ incorporated

-14-

this complaint into his finding that she is limited to working in a low-stress environment.  (Tr. 18).

*Remand:*

In this circuit, the Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.  *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983). Although substantial evidence does not support the Commissioner's decision, remand for benefits should not occur because proof of disability is not overwhelming or strong and there is evidence to the contrary.

*Conclusion:*

In summary, there is substantial evidence to support the ALJ's assessment of the medical opinions, the weight he assigned to those opinions, and the credibility determination regarding Lanese's complaints of pain.  The ALJ's finding that Lanese could return to her past relevant work as a customer service representative is not supported by substantial evidence.  The medical evidence showed that Lanese is limited to occasional contact with the public.  The ALJ credited this evidence and incorporated that limitation in his decision.  Yet, he concluded that Lanese could work as a customer service representative, which inherently requires frequent interaction with the public.  Based on the arguments presented in the Statement of Errors, the Commissioner's response and applicable law, the Commissioner's decision denying disability insurance benefits is therefore not supported by substantial evidence and is reversed and

remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. §405(g) to obtain

the requisite vocational expert testimony consistent with this opinion.

    s/James S. Gallas
United States Magistrate Judge

Dated: September 26, 2008.